## QUINN *v.* MURPHY.

Opinion delivered March 10, 1930.

J. D. Cook, Sr., and F. S. Quinn, for appellants.

Will Steel, for appellees.

HART, C. J., (after stating the facts). We are of the opinion that the decision of the chancellor was correct. Prior to the bringing of this suit, another suit had been brought to enforce the stockholders' agreement for contribution to pay the losses of indorsers on the paper of the old corporation, and this case is reported in 175 Ark. 10, 299 S. W. 361, under the style of *Murphy* v. *Winham*. By stipulation of the parties, the record of the testimony in that case is made a part of the present suit. Upon appeal, it was said that the chancery court in that case correctly held that the value of the assets of the old corporation was duly made and free from fraud, and that the price obtained $100,000 was the reasonable value thereof. The court stated further that this was the fair market value of the assets of the corporation at the time of the sale. It was further stated in the opinion that the organization of the new corporation was not made under such circumstances as to show that it was a continuation of the old corporation. It was stated that the facts showed it to be a separate corporation, and that the conveyance was made to the new corporation instead of to the liquidating agent for the sake of convenience, and that there was no fraud in organizing the new corporation for the purpose of buying the assets of the old corporation at a fair market price.

Several of the directors and stockholders of the old corporation testified in the present suit. Each of them

stated that $100,000 was the reasonable market value of the assets of the old corporation, and that it was intended by them that, if any one should bid more than the sum of $100,000 for the assets of the old corporation, they would not bid higher, and that such purchaser might have all of the assets of the old corporation for the sum so paid. The sum of $100,000 which was the capital stock of the new corporation was paid and used by the directors of the old corporation in paying off its debts. The directors and stockholders of the old corporation were liable for the balance of the indebtedness of that corporation in the sum of about $139,000. There is nothing whatever to show that they were actuated by fraud in liquidating the affairs of the old corporation, and they merely organized the new one for the purpose of purchasing the assets of the old corporation at a fair price and reimbursing themselves, if possible, for losses to the management of the old corporation. They testified that all of the stockholders were given an opportunity to take stock in the new corporation in the same proportion to that owned by them in the old corporation. Some of them testified that they were willing now to sell their stock to appellants at par value with six per cent. interest added. Two of them testified that they were willing to let appellants have their stock at par value without interest, and that the amount of stock owned by them in the new corporation was more than that owned by appellants in the old corporation. Therefore, we are of the opinion that the chancellor properly decided the issues in favor of appellees on the complaint of appellants.

Appellees have prosecuted a cross-appeal, and but little need be said on that phase of the case. The court properly held in favor of appellants on the issues raised by the cross-complaint of appellees. The cause of action of appellees against appellants arose from the stockholders' agreement in the old corporation which was signed by Mrs. Isabella Quinn, the widow of Thomas Quinn, after his death. Of course, the remaining appel-

lants, who were children and heirs at law of Thomas Quinn, were not bound by any agreement signed by his widow. Mrs. Isabella Quinn signed the agreement as administratrix of her husband's estate. The stockholders' agreement which she signed is copied in full in the transcript, but is too lengthy to be inserted in this opinion. We deem it sufficient to state that we have read and considered it in its entirety; and from it, and from the testimony of Mrs. Isabella Quinn, we are convinced that she did not sign it for the purpose of becoming personally liable, but only signed it in order to pledge her husband's interest in the assets of the old corporation, in so far as his interest would go for the payment of its debts. We are of the opinion, when the stockholders' agreement, the testimony of Mrs. Quinn, and all the surrounding circumstances are considered together, that the chancery court was warranted in holding that the administratrix was not liable personally by signing the stockholders' agreement. This would have been to make her liable on a promise which she never intended to make and which the parties to the stockholders' agreement never intended she should make. It is clear that it was only intended that she should pledge her dead husband's interest in the assets of the old corporation to the payment of its debts. *Altheimer* v. *Hunter*, 56 Ark. 149, 19 S. W. 496.

Finally, it is contended that the court erred in transferring the case to equity and in not retransferring it to the circuit court. We cannot consider this question. After the case was transferred from the circuit court to the chancery court, a motion was made to retransfer it to the circuit court. This motion was overruled by the chancery court, and no exception was taken to the ruling of the court. Therefore any alleged error in refusing to transfer the case back to the circuit court was waived, and the chancery court had jurisdiction to determine the issues raised by the pleadings.

We have carefully examined the record. It shows that the old corporation was duly organized and prose-

cuted its business in the State of Texas. When it became involved in financial difficulties, its affairs were wound up under the laws of the State of Texas, and no fraud in doing so has been established. The new corporation was duly organized and purchased the assets of the old corporation at a fair valuation. No fraud is shown either in the liquidation of the affairs of the old corporation or in the organization of the new corporation to purchase the assets of the old one. A careful consideration of the whole record leads us to the conclusion that the decision of the chancery court was correct, and it will therefore be affirmed.